WO                    IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


QUANTUM LEASING, LLC,                )
                                     )
                     Plaintiff,      )
                                     )
          vs.                        )
                                     )
ROBINSON HELICOPTER COMPANY, INC.,   )
a California corporation, and ROLLS  )
ROYCE CORPORATION, a Delaware        )
corporation,                         )
                                     )        No. 2:15-cv-1005-HRH
                     Defendants.     )
_____)


O R D E R

Motion to Dismiss; Motion to Transfer

Defendant Rolls-Royce Corporation moves to dismiss plaintiff's first amended complaint.[1] This motion is opposed,[2] and in the alternative, plaintiff moves to transfer this case to the Central District of California.[3] The motion to transfer is opposed.[4] Oral argument was requested but is not deemed necessary.

---

[1]Docket No. 25.

[2]Docket No. 26.

[3]Docket No. 27.

[4]Docket No. 31.

<u>Background</u>

Plaintiff is Quantum Leasing, LLC.  Defendants are Robinson Helicopter Company, Inc. and Rolls Royce Corporation (RRC).

On April 7, 2011, plaintiff ordered a R66 Robinson Helicopter from Quantum Helicopters, which is located in Chandler, Arizona.[5]  The purchase agreement provides that Quantum Helicopters is "an Independent Seller of Aircraft and not an agent of Robinson Helicopter Company...."[6]  "The Helicopter was manufactured by" Robinson, which is located in Torrance, California.[7]  Although plaintiff paid the deposit for the Helicopter to Quantum Helicopters, plaintiff alleges that it "paid the balance due on the Helicopter directly to" Robinson.[8]

Robinson used a Rolls-Royce RR300 engine in the Helicopter.[9]  RRC is a Delaware corporation, with its principal place of business in Indiana.[10]  "RRC's finance, human

---

[5]Helicopter Purchase Agreement, Exhibit 1, First Amended Complaint, Docket No. 24.  Quantum Helicopters (a Robinson dealer) is unrelated to plaintiff, Quantum Leasing LLC.  First Amended Complaint at 2, ¶ 3 & 7, ¶ 29, Docket No. 24.

[6]Helicopter Purchase Agreement, Exhibit 1, First Amended Complaint, Docket No. 24.

[7]First Amended Complaint at 2, ¶ 3 & 4, ¶ 14, Docket No. 24.

[8]<u>Id.</u> at ¶ 15.

[9]<u>Id.</u> at ¶ 14.  Plaintiff alleges that "[t]he RRC engine has been the <u>exclusive</u> engine used in Robinson's R66 helicopter since 2010."  <u>Id.</u> at 3, ¶ 9.

[10]<u>Id.</u> at 1, ¶ 2.

resources, and corporate records are all kept in the State of Indiana" and "RRC is not registered to do business in Arizona nor does it maintain any offices, accounts, or assets or property in Arizona."[11]  RRC does have one employee in Arizona, but "[t]hat employee does not design, manufacture, market, sell or distribute engines[.]"[12]  Plaintiff alleges that RRC, although headquartered in Indiana, "does business throughout the United States, including directly in California, and has consistently maintained a registered agent in California since 1993."[13]

The RR300 engine that was installed in the Helicopter was "manufactured in Indiana and sold, in an arm's length transaction, to Robinson Helicopter Company...."[14]  "Robinson Helicopter took possession and control of the subject RR300 turbine engine in Indiana once it was placed in transit to Robinson's factory located in Torrance, California."[15]  "RRC had no control of the subject engine once it left its possession in Indiana.  RRC did not direct Robinson thereafter as to what it could do with the engine or where it could send it."[16]

---

[11]Declaration of Paul T. Weber at 1, ¶¶ 3-4, Exhibit A, Rolls-Royce Corporation's Motion to Dismiss [etc.], Docket No. 25.

[12]Id. at ¶ 6.

[13]First Amended Complaint at 2, ¶ 2, Docket No. 24.

[14]Weber Declaration at 2, ¶ 7, Exhibit A, Rolls-Royce Corporation's Motion to Dismiss [etc.], Docket No. at ¶ 7.

[15]Id. at 3, ¶ 8.

[16]Id. at ¶ 9.

Quantum Helicopter agreed to deliver the Helicopter to plaintiff on a "Fly-Away-Factory" basis,[17] which means that Quantum Helicopters was to take delivery of the Helicopter from Robinson's factory in California and fly it to Arizona to deliver it to plaintiff.  On June 1, 2012, Neil Jones, who worked for Quantum Helicopters, and John Shufeldt, who worked for plaintiff, "traveled to California, where Jones took possession of the Helicopter.  They returned to Arizona where [plaintiff] then took possession of the Helicopter" after Shufeldt completed the required "R66 familiarization and pilot check-out course...."[18]  Shufeldt's "Check-Out" was done by Jones.[19]

The Helicopter was accompanied by an Operation and Maintenance Manual (OMM) and Rolls-Royce Engine Warranty.[20]  "The OMM lists 'Rolls-Royce RR300 Service Centers - Service/Warranty/OTC Parts Sales'", including "Vertical Aviation, 15035 N 73rd Street, Scottsdale, Arizona 85260."[21]  Vertical Aviation is also listed as a service center in RRC's "RR300 Owner/Operator Quick Reference Guide", which can be found on Robinson's

---

[17]Helicopter Purchase Agreement at 1, Exhibit 1, First Amended Complaint, Docket No. 24.

[18]R66 Addendum to Helicopter Purchase Agreement:  Pilot Requirements and Indemnity, Exhibit 3, First Amended Complaint, Docket No. 24.

[19]RHC R66 Pilot Check-Out, Exhibit 2, First Amended Complaint, Docket No. 24.

[20]First Amended Complaint at 3, ¶ 10, Docket No. 24.

[21]Id.

website.[22]  Plaintiff alleges that when RRC "makes amendments to its OMM for the RR300,

it directly emails notifications of these updates and amendments to all registered RR300

... owners, including all owners registered in the State of Arizona."[23]  RRC's Legal Counsel

and Assistant Secretary, Paul Weber avers that the OMM for the RR300 engine "was

developed in Indiana.  All decisions about the content of that OMM occurred in Indiana."[24]

Plaintiff alleges that the Helicopter experienced a "hot start" on May 10, 2013.[25]

According to the OMM then in effect, a visual inspection of the engine was to be

conducted.[26]  This is consistent with what plaintiff alleges Shufeldt was told by Jones

during his Check-Out.[27]  Plaintiff had a mechanic at Vertical Aviation conduct a visual

inspection of the engine after the May 10, 2013 hot start.[28]

On September 18, 2014, RRC "issued a change to its OMM" regarding hot starts.[29]

"[A] hot start now mandate[d] a complete replacement of two turbine wheels ..., rather

---

[22]Id. at 4, ¶ 12.

[23]Id. at ¶ 13.

[24]Weber Declaration at 2, ¶ 11, Exhibit A, Rolls-Royce Corporation's Motion to Dismiss [etc.],  Docket No. 25.

[25]First Amended Complaint at 6, ¶ 26, Docket No. 24.

[26]Id.

[27]Id. at 5, ¶ 19.

[28]Id. at 6, ¶ 26.

[29]Id. at 7, ¶ 27.

than just a visual inspection."[30]  Plaintiff alleges that the amended OMM was issued

through RRC's "FAST System[[31]] which generated an email to all registered owners of

RR300 engines informing of the change...."[32]

    Plaintiff alleges that RRC did not send it any notification of the amended OMM,

although RRC did send an email to Quantum Helicopters about the change.[33]  Quantum

Helicopters "is a separate and unrelated company" and thus plaintiff alleges that it "never

received notice from Rolls Royce that it changed its maintenance requirements for a" hot

start.[34]

    On October 28, 2014, the Helicopter experienced another hot start.[35]  Plaintiff took

the Helicopter to Quantum Helicopters for a visual inspection but was informed that "the

New OMM requirements mandated a replacement of two turbines ... rather than only the

---

[30]Id.

[31]"The FAST System is an online database owned and operated by" RRC.  Id. at 6,
¶ 25.  The "FAST System is ... maintained from Indiana" and is "used by buyers and sellers
to update their current information for warranty and notification purposes in connection
with Rolls-Royce Products."   Weber Declaration at 2, ¶ 12, Exhibit A, Rolls-Royce
Corporation's Motion to Dismiss [etc.], Docket No. 25.

[32]First Amended Complaint at 7, ¶ 28, Docket No. 24.

[33]Id. at ¶ 29.

[34]Id.

[35]Id. at ¶ 30.

expected visual inspection."[36]   Plaintiff alleges that it "has been without the use of its Helicopter" since October 28, 2014 "and has sustained economic losses and revenue as a result."[37]

Plaintiff commenced this case on June 2, 2015.   After RRC filed a motion to dismiss for lack of personal jurisdiction,[38] plaintiff moved to amend its complaint.[39]   The motion to amend was granted[40] and RRC's motion to dismiss was denied, with leave to renew once plaintiff filed an amended complaint.[41]   Plaintiff filed its amended complaint on September 16, 2015,[42] in which it asserts four claims against RRC:   1) negligence, 2) negligent misrepresentation, 3) consumer fraud, and 4) failure to warn.   Plaintiff's claims are based on RRC's failure to advise plaintiff as to the changes in the OMM regarding hot starts.

RRC now moves to dismiss all of plaintiff's claims against it on the grounds that this court lacks personal jurisdiction over RRC.   Should the court determine that it lacks

---

[36]Id. at 7-8, ¶¶ 30-31.

[37]Id. at 8, ¶ 32.

[38]Docket No. 9.

[39]Docket No. 14.

[40]Docket No. 20.

[41]Docket No. 19.

[42]Docket No. 24.

personal jurisdiction over RRC, plaintiff moves to transfer this case to the Central District of California.

Motion to Dismiss

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." Menken v. Emm, 503 F.3d 1050, 1056 (9th Cir. 2007). "However, this showing requires that the plaintiff 'make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" Id. (quoting Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001)). "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true." Id. (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004)).

"There are two types of personal jurisdiction: general and specific." Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 1995). "General jurisdiction exists if the nonresident's contacts with the forum are continuous and systematic, and the exercise of jurisdiction satisfies 'traditional notions of fair play and substantial justice.'" Id. (quoting Reebok Int'l Ltd. v. McLaughlin, 49 F.3d 1387, 1391 (9th Cir. 1995)). In response to RRC's motion to dismiss, plaintiff does not argue that the court has general jurisdiction over RRC. Thus, the only issue before the court on RRC's motion to dismiss is whether specific jurisdiction is available.

-8-

The court

> employ[s] a three-part test to assess whether a defendant has
> sufficient contacts with the forum state to be subject to specific
> personal jurisdiction:
> "(1) The non-resident defendant must purposefully direct his
> activities or consummate some transaction with the forum or
> resident thereof; or perform some act by which he purpose-
> fully avails himself of the privilege of conducting activities in
> the forum, thereby invoking the benefits and protections of its
> laws;
> (2) the claim must be one which arises out of or relates to the
> defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and
> substantial justice, i.e. it must be reasonable."

Picot v. Weston, 780 F.3d 1206, 1211-12 (9th Cir. 2015) (quoting Shwarzenegger, 374 F.3d
at 802).

As for prong one of the test, "[f]or claims sounding in tort," such as plaintiff has
asserted here, the court applies "a 'purposeful direction' test and look[s] to evidence that
the defendant has directed his actions at the forum state, even if those actions took place
elsewhere." Id. at 1212. "Under this test, a defendant purposefully directed his activities
at the forum if he: '(1) committed an intentional act, (2) expressly aimed at the forum state,
(3) causing harm that the defendant knows is likely to be suffered in the forum state.'" Id.
at 1214 (quoting Schwarzenegger, 374 F.3d at 803). "In applying this test, [the court] must
'look [] to the defendant's contacts with the forum State itself, not the defendant's contacts
with persons who reside there.'" Id. (quoting Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014)).
"Thus, a 'mere injury to a forum resident is not a sufficient connection to the forum.'" Id.

-9-

(quoting <u>Walden</u>, 134 S. Ct. at 1125).   The parties' arguments focus on whether RRC's conduct was expressly aimed at Arizona.

"The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state."   <u>Holland Amer. Line Inc. v. Wartsila N. Amer., Inc.</u>, 485 F.3d 450, 459 (9th Cir. 2007).   "Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state."   <u>Id.</u>   But, "placing a defective 'product into the stream of commerce' combined with 'an intent or purpose to serve the market in the forum state' constitutes purposeful availment."   <u>Patterson v. Home Depot, USA, Inc.</u>, 684 F. Supp. 2d 1170, 1182 (D. Ariz. 2010) (quoting <u>Asahi Metal Indus. Co. v. Superior Court</u>, 480 U.S. 102, 112 (1987)).   The

> plurality decision [in <u>Asahi Metal</u>] provided that a defendant may be subject to personal jurisdiction when he or she places an item or design into the "stream of commerce" and "purposefully directs" the item or design toward the forum state by "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State."

<u>Id.</u> (quoting <u>Asahi Metal</u>, 408 U.S. at 112).

Plaintiff first argues that RRC has evidenced an intent or purpose to serve the Arizona market by establishing an exclusive supplier relationship with Robinson knowing

that Robinson sells helicopters in Arizona.  More specifically, plaintiff alleges that RRC "directs its sale of the RR300 engine into Arizona through its relationship with" Robinson, which "markets, sells, delivers, and maintains the RR300 engines in Arizona through Robinson's Arizona Dealer[.]"[43]  Plaintiff is basically arguing that Robinson's contacts with Arizona can be imputed to RRC under an agency theory.  The contacts of one entity can be imputed to another for jurisdictional purposes where one entity acts as the general agent of the other.  Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1134 (9th Cir. 2003).

Plaintiff's argument that Robinson's contacts with Arizona can be imputed to RRC under an agency theory fails.  All plaintiff has alleged in support of its agency theory is a conclusory allegation that defendants were the agents of each other.[44]  Plaintiff has not alleged that RRC authorized Robinson to act as its agent nor has plaintiff alleged that RRC had any control over Robinson.  Rather, Robinson appears to be an independent manufacturer of helicopters.  Moreover, Weber avers that "RRC had no control of the subject engine once it left its possession in Indiana.  RRC did not direct Robinson thereafter as to what it could do with the engine or where it could send it."[45]

---

[43]First Amended Complaint at 3, ¶¶ 8-9, Docket No. 24.

[44]Id. at 2, ¶ 5.

[45]Weber Declaration at 2, ¶ 8, Exhibit A, Rolls-Royce Corporation's Motion to Dismiss [etc.], Docket No. 25.

Plaintiff next argues that RRC has evidenced an intent or purpose to serve the Arizona market by establishing channels to ensure that all Arizona purchasers of RR300 engines know which Arizona maintenance and repair centers are authorized to service RR300 engines. More specifically, plaintiff alleges that RRC provides an OMM for its products that lists Arizona service centers and maintains a website that contains information about RRC's products, including the RR300 engine.[46] Thus, plaintiff argues that RRC has established channels for providing regular advice to its customers in Arizona.

This argument fails. RRC's website is a passive website.[47] The Ninth Circuit has held that a "passive website is not purposefully directed to the forum state...." Holland America Line, 485 F.3d at 460. As for the OMM, "any print [material] that incidentally may have made their way to" Arizona do not "support a finding of jurisdiction without more substantial evidence of contacts with the state." Id. Here, there is no other substantial evidence of contacts by RRC with Arizona.

Finally, plaintiff argues that RRC has created continuing obligations between itself and residents of Arizona by providing Rolls-Royce Engine Warranties directly to owners of RR300 helicopters. Plaintiff contends that these warranties are not "mere isolated or short-lived transactions," Travelers Health Ass'n v. Com. of Va. ex rel. State Corp. Com'n,

---

[46]First Amended Complaint at 3, ¶ 10 and 4, ¶ 12, Docket No. 24.

[47]Weber Declaration at 2, ¶ 12, Exhibit A, Rolls-Royce Corporations' Motion to Dismiss [etc.], Docket No. 25.

70 S. Ct. 927, 930 (1950), but rather are systematically and widely delivered in Arizona to every purchaser of a RR300 engine.  However, plaintiff's first amended complaint contains no such allegations.  All plaintiff has alleged is that "all owners/operators of RR300 engines are provided this Warranty."[48]  There are no allegations in plaintiff's first amended complaint that suggest that the warranty has been "widely delivered" in Arizona nor are there any allegations that suggest that the warranty was, in fact, delivered by RRC, as opposed to being delivered by Quantum Helicopters, the entity that sold the Helicopter to plaintiff.

In sum, plaintiff has failed to show that RRC purposefully directed its activities toward Arizona.  Because plaintiff has failed to meet the requirements of prong one, the court need not consider whether the other two prongs of the specific jurisdiction test have been met.  The court lacks personal jurisdiction over RRC.

<u>Motion to Transfer</u>

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed or noticed[.]

28 U.S.C. § 1631.

---

[48]First Amended Complaint at 3, ¶ 11, Docket No. 24.

Plaintiff argues that this action could have been brought in California because RRC and Robinson are both subject to general jurisdiction in California.   "For general jurisdiction to exist, a defendant must engage in continuous and systematic general business contacts that approximate physical presence in the forum state[.]"   Mavrix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1223-24 (9th Cir. 2011) (citations omitted). "The standard is met only by continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities."   Id. at 1224 (citation omitted).   "To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, [the court] consider[s] their '[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets.'"   Id. (quoting Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1172 (9th Cir. 2006)).   "'The standard for general jurisdiction is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.'"   Id. (quoting Schwarzenegger, 374 F.3d at 801).

Plaintiff argues that RRC is subject to general jurisdiction in California because it does business in California in the form of selling engines to Robinson and because it has had a registered agent in California since 1993.   However, RRC's contacts with California do "not qualify as either substantial or continuous and systematic."   Bancroft & Masters,

-14-

Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).  Although RRC does have a registered agent in California, plaintiff has not alleged that RRC pays taxes in California, maintains any bank accounts in California, or actively markets its products in California. Id.  RRC does sell products to Robinson, which is located in California, but those products are manufactured in Indiana and then "turned over to a common carrier for shipment to [Robinson's] factory located in Torrance, California."[49]  Plaintiff has not alleged that RRC does any other business in or with California.  Moreover, RRC is not incorporated in California, does not have its principal place of business in California, and is not alleged to have any employees in California.  In sum, on the basis of what is before the court, RRC is not subject to general jurisdiction in California.

RRC is also not subject to specific jurisdiction in California.  "[C]ourts may exercise personal jurisdiction over a defendant who engages in an intentional act that causes harm in the forum state[.]"  Washington Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 673 (9th Cir. 2012).  Contrary to plaintiff's contention, the requirement that harm occur in the forum state applies in all tort cases, not only in cases in which intentional torts are alleged. See Menken, 503 F.3d at 1059 (analyzing whether harm occurred in forum state in case in which the plaintiff alleged claims of negligence, wrongful interference with contractual

---

[49]Declaration of Paul T. Weber at ¶ 7, Exhibit A, Rolls-Royce Corporation's Response to Quantum Leasing's Alternative Motion to Transfer Venue to the Central District of California, Docket No. 31.

relations, civil extortion, and a violation of A.R.S. § 33–420). None of the harm that plaintiff has alleged here occurred in California. Rather, the harm that plaintiff has alleged occurred in Arizona and/or Indiana.

Because RRC would not be subject to general or specific jurisdiction in California, this action could not have been brought in the Central District of California at the time it was filed. Plaintiff's alternative motion to transfer is denied.

<u>Conclusion</u>

RRC's motion to dismiss[50] is granted and plaintiff's alternative motion to transfer[51] is denied. The clerk of court shall enter judgment dismissing plaintiff's first amended complaint without prejudice.

DATED at Anchorage, Alaska, this 15th day of January, 2016.

<u>/s/ H. Russel Holland</u>
United States District Judge

---

[50]Docket No. 25.

[51]Docket No. 27.